IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| RBIII, L.P., § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> CITY OF SAN ANTONIO and § <br> REYES HERNANDEZ, Individually and in § <br> his official capacity as Supervisor of the § <br> Dangerous Premises Department of the City § <br> of San Antonio's Department of Code § <br> Compliance, § <br> § <br> Defendants. § | Civil Action No. SA-09-CV-119-XR |

**ORDER ON MOTION FOR SUMMARY JUDGMENT & MOTION TO DISMISS**

On this date, the Court considered Defendant Reyes Hernandez's motion for summary judgment (Docket Entry No. 37) and the City of San Antonio's Motion to Dismiss (contained in Docket Entry No. 38). Having considered the motions, Plaintiff's response, and the evidence provided, the Court GRANTS the motion for summary judgment and GRANTS IN PART AND DENIES IN PART the motion to dismiss.

**Background**

In January 2008, the City of San Antonio demolished the structure at 814 South Nueces Street, in San Antonio, Bexar County, Texas. On December 28, 2007, a Dangerous Premises Investigator for Defendant City of San Antonio ("the City") inspected the house on the property.[1]

---

[1] This Dangerous Premises Investigator was supervised by Defendant Reyes Hernandez, who is Supervisor of the Dangerous Premises Section for the City of San Antonio Housing and Neighborhood Development Department. The Complaint misidentifies Hernandez's position with

1

After being notified by the Dangerous Premises Investigator, Senior Building Inspector Ramiro Carrillo[2] then visited 814 South Nueces on the same day and recommended that the house be scheduled for emergency demolition, finding that the structure posed an imminent threat to life, safety, and/or property. The City demolished the structure on January 10, 2008.

RBIII claims the demolition of the property violated the procedures established in Article VIII, Section 6-175 of the City of San Antonio Code of Ordinances ("the ordinance").[3] RBIII filed

---

the City.

[2]Carrillo works for the City of San Antonio Planning and Development Services Department.

[3]The version of the ordinance in effect at the time the City demolished the property read:
Sec. 6-175. Emergency cases; summary abatement by city officials.
(a) In cases where it appears to the code compliance officer, the fire chief, or the director of development services, that due to one or more structural conditions threatening the structural integrity of a building or structure, there is a clear and imminent danger to the life, safety or property of any person unless a dangerous building or structure, as defined in this article, is immediately repaired or demolished, especially in cases where such a very dangerous building or structure, is located within one thousand (1,000) feet of a public or private elementary school, middle school, high school, or a state recognized day care center, any or of those officials (the official) shall execute the immediate vacation and or repair or demolition of such very dangerous building or structure, regardless of the date of its construction. Such summary action shall require concurrence from at least one other of the aforesaid officials. In the case of summary demolition, concurrence of the director of development services shall be required. Such concurrence shall include a determination that under the circumstances no other abatement procedure is reasonably available except demolition. The official taking action shall thereafter immediate provide notice to the DSDB, of the accomplished abatement; and to the owner and lienholders/mortgagees of said dangerous building. All costs, including asbestos and special or hazardous waste removal/disposal, of such emergency summary repair, vacation, or demolition of such dangerous building shall be collected in the manner provided by law.

2

suit against the City of San Antonio and Reyes Hernandez, Supervisor of the Dangerous Premises Section for the City of San Antonio Housing & Neighborhood Services Department, in his individual and official capacity. RBIII asserted multiple causes of action, including violations of Section 6-175 of the City's Code of Ordinances; violation of Chapter 214 of the Texas Local Government Code; violation of Article I, Sections 17 and 19 of the Texas Constitution; violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; "injury by motor vehicle of equipment"; trespass to real property; intrusion on seclusion; and a request for declaratory relief.

## Procedural History

RBIII filed suit against the City and Hernandez in the 228th Judicial District Court of Bexar County, Texas.[4] Defendants timely removed this case.[5] Defendant Hernandez filed a motion to dismiss on April 3, 2009,[6] and Plaintiff filed a motion for leave to amend its complaint on May 14, 2009.[7] The Court issued an order granting the motion for leave to amend and dismissing Plaintiff's claims against Hernandez in his official capacity, the Fourth Amendment claims against Hernandez based on the failure to procure a warrant, and the substantive due process claims against Hernandez

---

(b) The foregoing emergency abatement action shall be executed no later than seventy two (72) weekday hours, exclusive of weekends and holidays, after the official views the subject building or structure.
. . . .
SAN ANTONIO, TEX., CODE § 6-175 (2002).

[4]Pl.'s Original Pet., Jan. 28, 2009 (attached as exhibit to Docket Entry No. 1).

[5]Notice of Removal, Feb. 12, 2009 (Docket Entry No. 1).

[6]Mot. to Dismiss, April 3, 2009 (Docket Entry No. 13).

[7]Mot. for Leave to Amend Compl., May 14, 2009 (Docket Entry No. 19).

based on the alleged vagueness of the ordinance. RBIII amended its complaint,[8] and Hernandez filed a motion for summary judgment[9] ("Mot.") to which Plaintiff has failed to respond. The City moved to dismiss the state law claims against Hernandez ("City Mot."),[10] and RBIII has responded to the City's arguments ("Resp.").[11]

**Plaintiff's Pending Causes of Action Against Hernandez and the Motions**

In light of the Court's order on Hernandez's motion to dismiss and RBIII's amended complaint, the following claims remain against Hernandez:

1. violation of Article VIII, Section 6-175 of the San Antonio Code of Ordinances;

2. violation of provisions of the Texas Local Government Code;

3. violation of Article I, Section 19 of the Texas Constitution;

4. violation of Article I, Section 17 of the Texas Constitution;

5. a claim pursuant to 42 U.S.C. § 1983 for violation of procedural due process under the Fourteenth Amendment of the United States Constitution;

6. a claim pursuant to 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

7. a claim pursuant to 42 U.S.C. § 1983 for violation of the Fifth Amendment of the United States Constitution; and

8. three claims based in state law (*i.e.*, "injury by motor vehicle," trespass to real property,

---

[8]Pl.'s 1st Am. Compl., June 16, 2009 (Docket Entry No. 22).

[9]Def. Reyes Hernandez's Mot. for Summ. J., Dec. 18, 2009 (Docket Entry No. 37).

[10]The City moved to dismiss Hernandez from the suit in the City's motion for summary judgment. *See* Def.'s Mot. for Summ. J. 18–19, Dec. 18, 2009 (Docket Entry No. 38).

[11]RBIII responded to the City's motion in its response to the City's motion for summary judgment. *See* Pl.'s Resp. to City of San Antonio's Mot. for Summ. J. 16, Jan. 25, 2010 (Docket Entry No. 45).

and intrusion on seclusion).

Hernandez moves for summary judgment on the grounds of qualified immunity with respect to Plaintiff's Fourteenth Amendment procedural due process claim, Plaintiff's Fourteenth Amendment equal protection claim, and Plaintiff's Fifth Amendment takings claim. Hernandez also argues that the City of San Antonio has moved to dismiss the state based causes of action against him pursuant to section 101.106(e) of the Texas Civil Practice & Remedies Code. The City moves to dismiss the state law claims against Hernandez.

## Hernandez's Motion for Summary Judgment

### A. Legal Standard

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248; *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). A fact is "material" if its resolution in favor of one party might affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002).

The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party meets its initial burden, the nonmoving party "must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th

Cir. 1994). To avoid summary judgment, the nonmoving party must adduce admissible evidence that creates a fact issue concerning the existence of every essential component of that party's case and unsubstantiated assertions of actual dispute will not suffice. *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992). The opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991). The Court reviews all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009). A motion for summary judgment cannot be granted simply because there is no opposition. *Ford-Evans v. Smith*, 206 Fed. Appx. 332, 334 (5th Cir. 2006).

**B. Analysis**

Section 1983 does not convey substantive rights on its own but rather provides a vehicle by which a plaintiff may sue for deprivation of rights guaranteed under the Constitution or laws of the United States. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir. 1985). To prevail on a section 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir.), *cert. denied*, 543 U.S. 829, 125 S.Ct. 153, 160 L.Ed.2d 44 (2004).

Hernandez claims he is entitled to qualified immunity. (Mot. at 7–11.) Qualified immunity shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73

L.Ed.2d 396 (1982); *Flores v. City of Palacios*, 381 F.3d 391, 393–94 (5th Cir. 2004).

In reviewing a motion for summary judgment based on qualified immunity, a district court undertakes a two-step analysis.[12] *Flores*, 381 F.3d at 395. First, a court must determine whether a statutory or constitutional right would have been violated on the facts alleged. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Aucoin v. Haney*, 306 F.3d 268, 272 (5th Cir. 2002). If no constitutional right would have been violated were the allegations established, then the inquiry ends. *Saucier*, 533 U.S. at 201.

If a violation is properly alleged, then the court proceeds to the second step in which it determines whether the defendant's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores*, 381 F.3d at 395 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). A right is clearly established when its contours are sufficiently clear so that a reasonable official would understand that what he is doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Finally, if the law was clearly established at the time of the incident, the court must decide whether the defendant's conduct was objectively reasonable. *Aucoin*, 306 F.3d at 272. An official's conduct is objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the conduct violated the Constitution. *Hampton v.*

---

[12] The two-step procedure for determining qualified immunity established in *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), is no longer mandatory. *See Pearson v. Callahan*, -- U.S. ----, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009) ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."). Courts are free to consider the second prong without first deciding whether the facts show a constitutional violation. *Id.* The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id.* at 821.

*Oktibbeha County Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007). Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Hernandez ex. rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004).

Once a government officer pleads the affirmative defense of qualified immunity, the burden shifts to the plaintiff to rebut the defense by establishing that the employee's allegedly wrongful conduct violated clearly established law. *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). This burden requires the plaintiff to plead "claims of specific conduct and actions giving rise to a constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996).

Under the facts alleged, RBIII cannot show that Hernandez violated a clearly established statutory or constitutional right that a reasonable person would have known. "Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997). Here, Hernandez attests that he was the Supervisor of the Dangerous Premises Section for the City of San Antonio Housing and Neighborhood Services Department. In that capacity he supervised dangerous premises investigators, including the investigator who evaluated 814 South Nueces Street. According to Hernandez, he would review the case file provided to him by the investigator and present it to the Director of the Development Services Department who would then review the file and determine whether the building posed a clear and imminent danger.[13] Hernandez disclaims any

---

[13]Hernandez states:
> As the Supervisor of the Dangerous Premises Section it was my procedure to review a case file provided to me by the dangerous premise[s] investigator and present the case file to the Acting Director or Director of the Development Services Department for his review

8

authority regarding the decision to declare a building a danger or schedule it for immediate demolition.[14] He further states that he does not know any of the limited general partners of RBIII.[15]

RBIII presents no evidence to show that Hernandez violated a clearly established statutory or constitutional right that a reasonable person would have known. Plaintiff is therefore unable to rebut the defense of qualified immunity. As a result, RBIII cannot prove its claims for violations of 42 U.S.C. § 1983 against Hernandez.

**City of San Antonio's Motion to Dismiss Pursuant to Texas Statute**

The City moves to dismiss all of RBIII's claims based in state law against Hernandez pursuant to the Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE § 101.106(e) (Vernon 2005). (City Mot. 18–19; *see also* Mot. at 5–6.) RBIII argues that the Texas Tort Claims Act is inapplicable

---

and determination whether the building or structure was a clear and imminent danger to the life, safety or property of any person and that under the circumstances no abatement procedure other than immediate demolition is reasonably available.
Aff. of Reyes Hernandez 2 (Dec. 18, 2009) (Hernandez Mot. ex. 1).

[14]Hernandez states further:
[M]y normal procedure would have been to simply review the file to ensure that all of the necessary forms had been completed and necessary information was contained in the file and then present the file to the office of the Director of the Development Services Department for his consideration. . . . I had no part in the actual decision whether the property should be scheduled for immediate demolition or not. . . . It is further my testimony that my normal operating procedure would be when I presented the file to the Development Services Department that I did not consult with the Director or provide any opinion or recommendation with regard to whether the structure constituted a clear and imminent danger . . . .
*Id.* at 2–3.

[15]Hernandez declared: "I do not now and have never known any of the limited or general partners of the Plaintiff, RBIII, LP." *Id.* at 3.

to its "non-Texas Tort Claims Act claims." (Resp. at 16).

Section 101.106(e) provides for the dismissal of claims brought under the Texas Tort Claims Act against a governmental entity's employees upon the motion of the governmental entity. TEX. CIV. PRAC. & REM. CODE § 101.106(e).[16] The Texas Supreme Court has declared that all tort theories of recovery alleged against a governmental unit are presumed to be brought under the Texas Tort Claims Act. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) ("Because the Tort Claims Act is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [the Tort Claims Act]' for purposes of section 101.106."). Here, RBIII has elected to sue the City of San Antonio and Hernandez, an employee of the City. The City, a governmental unit under the statute, has moved to dismiss RBIII's state law theories of recovery pursuant to section 101.106(e). As a result, RBIII's state tort claims for "injury by motor vehicle," trespass to real property, and intrusion on seclusion are dismissed against Hernandez.

RBIII also seeks damages from Hernandez for his alleged violation of the city ordinance, state statute, and the Texas Constitution.[17] (Am. Compl. ¶¶ 8.4, 9.3, 10.3 & 11.3.) In *Mission*

---

[16]The statute provides: "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE § 101.106(e).

[17]In a recent opinion, a Texas court of appeals examined the application of section 101.106(e) to claims seeking damages for alleged violations of the Texas Constitution. *See City of Arlington v. Randall*, -- S.W.3d ---, 2009 WL 4757272, at *3–4 (Tex. App.—Fort Worth 2009, pet. filed). The court declared that the plaintiff's claims to obtain damages for violations of the Texas Constitution were brought under the Texas Tort Claims Act while a request for declaratory judgment based on constitutional violations did not fall under the Act. *Id.* at *4 ("To the extent that [the plaintiff] sought damages for alleged constitutional violations, his claims were brought 'under the [TTCA]'

*Consolidated Independent School District v. Garcia*, the Texas Supreme Court held that the Texas Tort Claims Act applies to all tort claims of recovery. *Garcia*, 253 S.W.3d at 659. In *Garcia*, the court interpreted 101.106(e) in the context of the other subsections of section 101.106. *See id.* In light of the claims and procedural posture of the case, the court evaluated subsection (e) in conjunction with subsection (b), which operates to bar an entire suit against a governmental entity based on the same subject matter if the plaintiff elects to only sue the entity's employee in the initial suit.[18] *Id.* ("We agree with the [the governmental entity] that to the extent subsection (b) applies, it bars *any suit* against the governmental unit regarding the same subject matter, not just suits for which the Tort Claims Act waives immunity or those that allege common-law claims."). The court recognized that subsection (b) differs from the other subsections of 101.106 because they contain the limiting phrase "under this chapter." *Id.* ("Since we give effect to all words in a statute, "under this chapter" must operate to make the scope of (a), (c), (e), and (f) different from that of (b).").

In this case, the City has moved to dismiss the "state law" claims against Hernandez. By

---

for purposes of section 101.106(e). . . . But to the extent that [the plaintiff sought a declaratory judgment based on [the defendant's] alleged constitutional violations, he did not file suit 'under the [TTCA].'").

This Court, Judge Frank Montalvo presiding, declined to examine the application of section 101.106(e) to every state law claim presented by a plaintiff because sufficient grounds existed to dismiss the claims on the grounds of official immunity. *Gonzalez v. City of El Paso*, No. EP-05-CA-447-FM, 2006 WL 2827259, at *2 (W.D. Tex. Sept. 7, 2006).

The City of San Antonio's motion to dismiss does not provide any briefing regarding the applicability of section 101.106(e) to RBIII's claims against Hernandez for violations of the city ordinance, the state statute, or the Texas Constitution. A motion for summary judgment on the grounds of official immunity is not before the Court.

[18]Subsection (b) reads: "The filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents." TEX. CIV. PRAC. & REM. CODE § 101.106(b).

11

filing a claim under the Texas Tort Claims Act against the City, RBIII is barred from seeking recovery against Hernandez regarding the same subject matter. TEX. CIV. PRAC. & REM. CODE § 101.106(a).[19] Unlike subsection (b), which "bars any suit against the governmental unit regarding the same subject matter," subsection (a) contains the limiting phrase "under this chapter." *See Garcia*, 253 S.W.3d at 659–60. In accordance with the Texas Supreme Court's explanation of the Texas Tort Claims Act, to "give effect to all words in the statute," and recognizing that the phrase "under this chapter" "must operate to make the scope of [subsection] (a) . . . different from that of (b)", the Court is unable to dismiss the claims asserted by RBIII based on violations of the city ordinance, state statutory law, and the Texas Constitution.[20]

## Conclusion

The Court GRANTS Defendant Hernandez's motion for summary judgment. As a result, RBIII is unable to pursue claims against Hernandez pursuant to 42 U.S.C. § 1983 for violations of procedural due process under the Fourteenth Amendment, equal protection under the Fourteenth Amendment, and the takings clause of the Fifth Amendment. The Court GRANTS IN PART AND

---

[19]Subsection (a) reads: "The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." TEX. CIV. PRAC. & REM. CODE § 101.106(a).

[20]The Court is guided by the Texas Supreme Court's explanation in *Mission Consolidated School District v. Garcia*, which interpreted the 2003 amendments to the statute by the Texas Legislature. An intermediate court's opinion provides additional analysis on the language of the Texas Tort Claims Act. *See Tex. Bay Cherry Hill, L.P. v. City of Forth Worth*, 257 S.W.3d 379, 400–01 (Tex. App.—Fort Worth 2008, no pet.). The Court notes that the City's motion to dismiss merely seeks dismissal of the "state law claims" but provides no briefing regarding the application of the Texas Tort Claims Act to the claims for violation of the city ordinance, state statute, or Texas Constitution or whether they arise under the same subject matter.

DENIES IN PART the City of San Antonio's motion to dismiss claims against Hernandez pursuant to Texas Civil Practice & Remedies Code § 101.106(e). Plaintiff's claims for injury by motor vehicle, trespass to real property, and intrusion on seclusion are DISMISSED against Hernandez. The remaining claims against Hernandez are: violation of the city ordinance, violation of Chapter 214 of the Texas Local Government Code, and violations of the Texas Constitution.

It is so ORDERED.

SIGNED this 19th day of February, 2010.

                                              XAVIER RODRIGUEZ
                                              UNITED STATES DISTRICT JUDGE