**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| RBIII, L.P., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-09-CV-119-XR |
| | § | |
| CITY OF SAN ANTONIO and | § | |
| REYES HERNANDEZ, Individually and in | § | |
| his official capacity as Supervisor of the | § | |
| Dangerous Premises Department of the City | § | |
| of San Antonio's Department of Code | § | |
| Compliance, | § | |
| | § | |
| *Defendants*. | § | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

On this day, the Court considered Plaintiff RBIII, LP's motion for summary judgment (Docket Entry No. 78), Defendant City of San Antonio's second motion for summary judgment (Docket Entry No. 76), and Defendant Reyes Hernandez's second motion for summary judgment (Docket Entry No. 77).  Having considered the motions, responses thereto, and the evidence provided, the Court DENIES Plaintiff RBIII's motion for summary judgment, GRANTS IN PART and DENIES IN PART Defendant City of San Antonio's second motion for summary judgment, and GRANTS Defendant Reyes Hernandez's second motion for summary judgment.

### Background

On January 10, 2008, the City of San Antonio demolished the structure at NGB-6023 Block G Lot-9 & 10, commonly referred to as 814 South Nueces Street, in San Antonio, Bexar

1

County, Texas.[1]   Plaintiff RBIII, L.P. ("RBIII") purchased the property with the intention of rehabilitating the home on the premises.  In late October or early November 2007, Steven Gragg, one of RBIII's partners, visited the property to obtain bids from contractors.  In late December 2007 or early January 2008, Gragg returned to place a "for sale" sign up at the site.  There is no evidence that any repairs were made.

On December 28, 2007, Irma Ybarra, Dangerous Premises Investigator for Defendant City of San Antonio ("the City"), inspected the house at 814 South Nueces after receiving telephone calls from neighbors who complained of vagrants entering the property.[2]  Questioning the stability of the structure, she requested that the City's building inspector evaluate the house because she suspected that it posed a clear and imminent danger to the public.[3]  Building Inspector Ramiro Carillo visited 814 South Nueces and found it to be a dangerous premise posing a clear and imminent danger to the public.[4]

After evaluating the pictures, report, and recommendation of the inspectors, the City's Director of Development Services, Roderick J. Sanchez and the City's Director of Housing and Neighborhood Services, David D. Garza, signed affidavits declaring that the structure at 814 S. Nueces presented a "clear and imminent threat to life, safety, and/or property necessitating an

---

[1]Plaintiff claims in his response to the City of San Antonio's motion for summary judgment that the demolition occurred on January 28, 2008.  Contrary to Plaintiff's assertions, the evidence shows that the property was demolished on January 10, 2008.

[2]Ybarra was supervised by Defendant Reyes Hernandez, who is Supervisor of the Dangerous Premises Section for the City of San Antonio Housing and Neighborhood Development Department. Plaintiff's First Amended Complaint misidentifies Hernandez's position with the City.

[3]Aff. of Irma Ybarra 3, Dec. 17, 2009 (City's Ex. 1, pp. 1-5).

[4]*Id.*; Aff. of Ramiro Carillo 3, Dec. 16, 2009 (Cit's Resp. Ex. 2, pp. 1-4).

2

immediate demolition."[5]   The City demolished the structure on January 10, 2008.

RBIII claims the demolition of the property violated the procedures established in Article VIII, Section 6-175 of the City of San Antonio Code of Ordinances ("the ordinance").   RBIII filed suit against the City of San Antonio and Reyes Hernandez, Supervisor of the Dangerous Premises Section for the City of San Antonio Housing & Neighborhood Services Department, in his individual and official capacity.   The complaint asserted multiple causes of action, including violations of Section 6-175 of the City's Code of Ordinances; violation of Chapter 214 of the Texas Local Government Code; violation of Article I, Sections 17 and 19 of the Texas Constitution; violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983; "injury by motor vehicle of equipment"; trespass to real property; intrusion on seclusion; and a request for declaratory relief.

**Procedural History**

RBIII filed suit against the City and Hernandez in the 228th Judicial District Court of Bexar County, Texas.[6]   Defendants timely removed this case.[7]   Hernandez filed a motion to dismiss on April 3, 2009,[8] and RBIII filed a motion for leave to amend its complaint on May 14, 2009.[9]   The Court issued an order granting the motion for leave to amend and dismissing RBIII's

---

[5]Aff. of Roderick J. Sanchez, Jan. 3, 2008 and Jan. 7, 2008 (City's Resp. Mot. Ex. 1, pp. 14, 15); Affs. of David D. Garza, Jan. 3, 2008 and Jan. 7, 2008 (City's Resp. Mot. Ex. 1, pp. 13, 16).

[6]Pl.'s Original Pet., Jan. 28, 2009 (attached as exhibit to Docket Entry No. 1).

[7]Notice of Removal, Feb. 12, 2009 (Docket Entry No. 1).

[8]Def. Hernandez's Mot. to Dismiss, April 3, 2009 (Docket Entry No. 13).

[9]Mot. for Leave to Am. Compl., May 14, 2009 (Docket Entry No. 19).

claims against Hernandez in his official capacity, the Fourth Amendment claims against Hernandez based on the failure to procure a warrant, and the substantive due process claims against Hernandez based on the alleged vagueness of the ordinance.[10]   RBIII amended its complaint,[11] and Hernandez filed a motion for summary judgment[12] to which Plaintiff failed to respond.  The City moved to dismiss the state law claims against Hernandez,[13] and RBIII responded to the City's arguments.[14]   On February 19, 2010, the Court granted Hernandez's motion for summary judgment and dismissed RBIII's claims against Hernandez for violations of procedural due process and equal protection of the Fourteenth Amendment, and the takings clause of the Fifth Amendment.[15]   The Court also granted the City's motion to dismiss in part, dismissing the state tort law claims against Hernandez.

In a hearing on February 25, 2010, the Court orally granted summary judgment in part for the City, ruling that on January 10, 2008, "the building posed an imminent threat to life, safety and/or property."[16]   The Court also permitted the parties to file new motions for summary judgment.

---

[10]Order on Mot. to Dismiss and Mot. for Leave to Amend Compl., June 16, 2009 (Docket Entry No. 21).

[11]Pl.'s 1st Am. Compl., June 16, 2009 (Docket Entry No. 22).

[12]Def. Hernandez's 1st Mot. for Summ. J., Dec. 18, 2009 (Docket Entry No. 37).

[13]Def. City's 1st Mot. for Summ. J. 18–19, Dec. 18, 2009 (Docket Entry No. 38).

[14]Pl.'s Resp. to City of San Antonio's 1st Mot. for Summ. J. 16, Jan. 25, 2010 (Docket Entry No. 45).

[15]Order on Mot. For Summ. J. And Mot. To Dismiss, Feb. 19,2 010 (Docket Entry No. 70).

[16]Pretrial Conf. Tr. 19, February 25, 2010 (Docket Entry No. 75).

4

Both Defendants filed new motions for summary judgment on April 5, 2010.[17]  Plaintiff also filed a motion for summary judgment on April 5, 2010.[18]  Plaintiff filed a response to the City's summary judgment motion on April 16, 2010,[19] and filed no response to Hernandez's motion.  The City filed a response to Plaintiff's motion for summary judgment on April 16, 2010.[20]  Hernandez has filed no response to Plaintiff's motion for summary judgment.

### Plaintiff's Pending Causes of Action against both Defendants

In light of the Court's orders on previous motions, the following claims remain against both the City and Hernandez:

1.  violation of Article VIII, Section 6-175 of the San Antonio Code of Ordinances;

2.  violation of provisions of the Texas Local Government Code;

3.  violation of Article I, Section 17 of the Texas Constitution;

4.  violation of Article I, Section 19 of the Texas Constitution.

---

[17]Def. City's 2d Mot. For Summ. J., Apr. 5, 2010 (Docket Entry No. 76) ("City's 2d Mot."), Def. Hernandez's 2d Mot. For Summ. J., Apr. 5, 2010 (Docket Entry No. 77) ("Hernandez's 2d Mot.").

[18]Pl. Mot. For Summ. J., Apr. 5, 2010 (Docket Entry 78) ("Pl.'s Mot.").  This filing was incorrectly titled "RBIII, LP's Response to City of San Antonio's Motion for Summary Judgment." Plaintiff clarified in its April 16, 2010 Response to the City's motion for summary judgment that its April 5, 2010 filing was intended as an affirmative motion for summary judgment.

[19]Pl.'s Resp. to Def. City's Mot. for Summ. J., Apr. 16, 2010 (Docket Entry No. 79) ("Pl.'s Resp. Mot.").

[20]Def. City's Resp. To Pl.'s Mot. for Summ. J., Apr. 16, 2010 (Docket Entry No. 80) ("City's Resp. Mot.").

**Plaintiff's Pending Causes of Action against only Defendant City of San Antonio**

In light of the Court's orders on previous motions, the following additional claims remain against the City:

1. claim under the Texas Declaratory Judgments Act to declare Article VIII, Section 6-175 of the San Antonio Code of Ordinances unconstitutional and in violation of the Texas Local Government Code;

2. violation of the Fourteenth Amendment of the U.S. Constitution;

3. violation of the Fifth Amendment of the U.S. Constitution;

4. violation of the Fourth Amendment of the U.S. Constitution;

5. claims under state tort law of trespass to real property and intrusion on seclusion; and

6 claims under state tort law of injury by motor vehicle or equipment.

**Legal Standard**

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248; *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). A fact is "material" if its resolution in favor of one party might affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002).

The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854,

6

860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  Once the moving party meets its initial burden, the nonmoving party "must . . . set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).  To avoid summary judgment, the nonmoving party must adduce admissible evidence that creates a fact issue concerning the existence of every essential component of that party's case and unsubstantiated assertions of actual dispute will not suffice.  *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992).  The opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991).  The Court reviews all facts in the light most favorable to the nonmoving party.  *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).  A motion for summary judgment cannot be granted simply because there is no opposition.  *Ford-Evans v. Smith*, 206 Fed. Appx. 332, 334 (5th Cir. 2006).

**Analysis**

**A.  Claims Remaining Against Both Defendants**

*1.  Chapter 6-175 of the San Antonio Code of Ordinances*[21]

RBIII pled that 1) Defendants did not follow the provisions of the ordinance, 2) applied the ordinance on an *ad hoc* or capricious basis, and 3) the ordinance itself is unconstitutionally vague.[22]  RBIII moved for summary judgment that Defendants violated the ordinance's

---

[21]The version of the ordinance in effect at the time the City demolished the property read:

Sec. 6-175.   Emergency cases; summary abatement by city officials.

(a)       In cases where it appears to the code compliance officer, the fire chief, or the director of development services, that due to one or more structural conditions threatening the structural integrity of a building or structure, there is a clear and imminent danger to the life, safety or property of any person unless a dangerous building or structure, as defined in this article, is immediately repaired or demolished, especially in cases where such a very dangerous buidling or structure, is located within one thousand (1,000) feet of a public or private elementary school, middle school, high school, or a state recognized day care center, any of those officials (the official) shall execute the immediate vacation and/or repair or demolition of such very dangerous building or structure, regardless of the date of its construction.  Such summary action shall require concurrence from at least one other of the aforesaid officials.  In the case of summary demolition, concurrence of the director of development service shall be required.   Such  concurrence  shall  include  a  determination  that  under  the circumstances no other abatement procedure is reasonably available except demolition.  The official taking action shall thereafter immediately provide notice to the [Dangerous Structures Determination Board], of the accomplished abatement; and to the owner and lienholders/mortgagees of said dangerous building.  All costs, including asbestos and special or hazardous waste removal/disposal, of such emergency summary repair, vacation, or demolition of such dangerous building shall be collected in the manner provided by law.

(b)       The foregoing emergency abatement action shall be executed no later than seventy two (72) weekday hours, exclusive of weekends and holidays, after the official views the subject building or structure.

...
SAN ANTONIO, TEX. CODE § 6-175 (2002).

[22]Pl.'s 1st Am. Compl. at 5-6.  The second two arguments relate to Plaintiff's claims under the Fourteenth Amendment equal protection and substantive due process, and the Court will address

provisions, claiming that the City violated the statue by 1) failing to have an official view the structure prior to demolition, 2) demolishing the property more than seventy-two hours after an official viewed the property, and 3) failing to issue a determination by an official that "no other abatement procedure" was "reasonably available."[23]  RBIII pled that Hernandez "was acting in a supervisory capacity" during the demolition process, that he "initiated, orchestrated, or at a minimum, had personal knowledge of the demolition," and that he had "direct operational control" over the demolition.[24]

      Hernandez and the City both move for summary judgment on RBIII's claims for monetary damages pursuant to Chapter 6-175.  The City argues that Plaintiff has failed to offer any evidence establishing that it failed to comply with the ordinance, that Plaintiff is trying to re-write the ordinance to include pre-hearing notice requirements that exist in other chapters of the ordinance, but not in 6-175, and that notice is not required when exigent circumstances exist such as they did here.  The City has presented evidence that it complied with the requirements of the ordinance.  As required, two "officials," including Director of Developments Services Roderick Sanchez, concurred that the property constituted a clear and imminent danger to life, safety or property.[25]  The demolition occurred on January 10, 2008, within 72 hours after the officials' concurrence on January 7, 2008.[26]  The concurring opinions included a determination that no

those in turn.

[23]Pl.'s Mot. at 3.

[24]Pl.'s 1st Am. Compl. at 6.

[25]Affs. of Roderick J. Sanchez; Affs. of David Garza.

[26]Demolition Work Orders signed by David Garza, Director of Housing and Neighborhood Services, Jan. 10, 2008 (City's Resp. Mot.Ex. 1 at 18-20).

other abatement procedure was reasonably available under the circumstances.[27]  Post demolition

notice was provided to both RBIII, record owner of the property on the day of demolition, and the

Dangerous Structures Determination Board.[28]  Plaintiff has provided no evidence to the contrary

or to establish that any of these requirements were not met.

Defendants also argue that Chapter 6-175 creates no private cause of action for monetary

damages.[29]  Plaintiff argues that the right to a private cause of action can be inferred by the intent

behind Chapter 6-175.[30]  The City is correct that the ordinance does not provide any private cause

of action by which plaintiff can seek damages.  In the *Kinnison* case also pending before this

Court and raising the identical issue, the Court ruled that no private cause of action is provided in

Chapter 6-175.  *Kinnison v. City of San Antonio*, No. 08-CV-421-XR, Ord. on Summ. J. 9 (July

21, 2010).

Here, Plaintiff makes identical arguments to those made by the Plaintiff in *Kinnison*, and

the Court disposes of them for the same reasons.  Under Texas law, courts construe municipal

ordinances in the same manner that they construe statutes.  *Bd. of Adjustment of City of San*

*Antonio v. Wende*, 92 S.W.3d 424, 430 (Tex. 2002).  Texas courts "apply a 'strict rule of

construction' to statutory enforcement schemes and imply causes of action only when the

drafters' intent is clearly expressed from the language as written."  *Witkowski v. Brian, Fooshee*

*and Yonge Props.*, 181 S.W.3d 824, 831 (Tex. App. - Austin 2005, no pet.) (citing *Brown v. De*

---

[27]Affs. of Roderick J. Sanchez; Affs. of David Garza.

[28]Aff. of Irma Ybarra at 4; Notice Summary Abatement - Emergency Demolition, Jan. 11, 2008 (City's Resp. Mot. Ex. 1 at 26) (cc: Dangerous Structure Determination Board).

[29]City's 2d Mot. at 5-7.

[30]Pl.'s Resp. Mot. at 2.

*La Cruz*, 156 S.W.3d 560, 567 (Tex. 2004)).  Plaintiff admits and a review of the ordinance shows that the city ordinance did not provide for an express private cause of action.  Moreover, the language of the ordinance did not indicate any intent to create a private cause of action.  The language merely authorizes officials to conduct a summary abatement procedure in an emergency and outlines the procedures necessary to execute the abatement.  The ordinance does not reference the property owner nor does it provide for a penalty for failure to adhere to the ordinance.  Plaintiff argues, without providing the Court any citation, that the City's Dangerous Structures Determination Board "allows for some judicial review of the [Dangerous Structures Determination Board's] decision making," which it argues would allow the Court to infer that judicial redress is justified.[31]  Plaintiff provides no support for the argument that such an inference is justified solely due to the absence of any clear intent to the contrary.  *See Brown*, 156 S.W.3d at 563 (holding that a private cause of action was created only if it was clearly implied by the language of specific provisions).  Plaintiff's unsupported claim that "great harm" justifies a private cause of action is likewise unsupported.  "The fact that a person has suffered harm from the violation of a statute does not automatically give rise to a private cause of action in favor of that person."  *Witkowski,* 181 S.W.3d at 831 (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688, 99 S. Ct. 1946, 60 L. Ed.2d 560 (1979)).

Because Chapter 6-175 provides no private cause of action for monetary damages, summary judgment is granted in favor of the Defendants on Plaintiff's claims under the ordinance.

---

[31]Pl.'s Resp. Mot. at 3.

*2.  Texas Local Government Code Provisions 214.001, 214.0011, and 214.00111*

Plaintiff claims that the City violated § 214.001 of the Texas Local Government Code by failing to provide pre-demolition notice and hearing.[32]  It claims that Chapter 6-175 does not provide for these measures, and that the City failed to provide them before demolishing the property.  The City argues that § 214.002, providing that a structure may be demolished if it is "likely to endanger persons or property"[33] should apply instead of § 214.001 because this Court

---

[32]Pl.'s Mot. at 5.  The Statute reads in part:

(a)     A municipality may, by ordinance, require the vacation, relocation of occupants, securing, repair, removal, or demolition of a building that is:
    (1)     dilapidated, substandard, or unfit for human habitation and a hazard to the public health,
    safety, and welfare;
    (2)     regardless of its structural condition, unoccupied by its owners, lessees, or other invitees and is unsecured from unauthorized entry to the extent that it could be entered or used by vagrants or other uninvited presons as a place of harborage or could be entered or used by children; or
    (3)     boarded up, fenced, or otherwise secured in any manner if:
        (A)     the building constitutes a danger to the public even though secured from entry; or
        (B)     the means used to secure the building are inadequate to prevent unauthorized entry or use of the building in the manner described by Subdivision (2).
(b)     The ordinance must:
    (1)     establish minimum standards for the continued use and occupancy of all buildings regardless of the date of their construction;
    (2)     provide for giving proper notice to the owner of a buliding; and
    (3)     provide for a public hearing to determine whether a building complies with the standards set out in the ordinance.
Tex. Local Gov't Code. Ann. § 214.001.

[33]*Id*. § 214.002 (Def. City's 2d Mot. Ex. C).  The statute reads:
(a)     If the governing body of a municipality finds that a building, bulkhead, or other method of shoreline protection, fence, shed, awning, or other structure, or part of a structure, is likely to endanger persons or property, the governing body may:
    (1)     order the owner of the structure, the owner's agent, or the owner or occupant of the property on which the structure is located to repair, remove, or demolish the structure, or the part of the structure, within a specified time; or

12

has already ruled that the property posed an imminent threat to life, safety, and/or property on the date of demolition.[34]

Regardless of whether § 214.001 or § 214.002 is applicable to this case, there is no explicit or clearly implied right to recover monetary damages authorized under the statute for a municipality's failure to follow either section.  Statutory enforcement schemes are strictly construed, and where a statute is silent as to a private right to enforcement, it is presumed that the legislature did not intend to create one.  *Witkowski v. Brian, Fooshe and Yonge Properties*, 181 S.W.3d 824, 831 (Tex.App – Austin 2005) (citing *Touche Ross & Co v. Redington*, 442 U.S. 560, 571-572, 99 S.Ct. 2479, 61 L.Ed. 2d 82 (1979)).  The fact that a person has been harmed by the violation of a statute does not automatically grant that person a private right of action. *Witkowski*, 181 S.W.3d at 831 (citing *Cannon v. University of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)).

RBIII also alleges that Defendants have violated Section 214.0011, which grants a municipality the authority to set minimum standards for use and occupancy of buildings, and sets out the municipality's authority to secure a building in violation of those minimum standards.

---

        (2)      repair, remove, or demolish the structure, or the part of the structure, at the expense of the municipality, on behalf of the owner of the structure or the owner of the property on which the structure is located, and assess the repair, removal, or demolition expenses on the property on which the structure was located.

(b)     The governing body shall provide by ordinance for:

        (1)      the assessment of repair, removal, or demolition expenses incurred under Subsection (a)(2);

        (2)      a method of giving notice of the assessment; and

        (3) a method of recovering the expenses.

(c)     The governing body may punish by a fine, confinement in jail, or both a person who does not comply with an order issued under Subsection (a)(1).

[34]City's 2d Mot. at 7-8.

Tex. Local Gov. Code § 214.0011 (Vernon 2008).  There is no evidence before the Court that the City secured the structure on RBIII's property or that it tried to do so.  Section 214.0011 is therefore inapplicable to this case.

Section 214.00111 provides for the preservation of a substandard building that is classified as a historic property.  *Id.* at § 214.00111.  It specifically does not apply to owner-occupied, single family dwellings.  *Id.*  RBIII has presented no evidence that its structure was a historic landmark or that it was located within a historic district.  Furthermore, the City has presented proof that it did in fact notify the historic preservation board of the intended demolition on December 28, 2007, through the City of San Antonio Historic Preservation Office.[35]  The Office responded that the structure was not of historic significance and was not located in a historic district.[36]  Therefore, the City complied with the requirements of this Section.

Accordingly, the Court grants summary judgment in favor of the Defendants on RBIII's claims for monetary relief pursuant to Section 214.001, 214.0011, and 214.00111 of the Texas Local Government Code.

### 3.  Article I, Section 17 of the Texas Constitution

Article 1, § 17 of the Texas Constitution states that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made..." Tex. Const. art. I, § 17; *see also Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980) ("The Constitution itself is the authorization for compensation for the destruction of property...")

---

[35]Notification to Historic Preservation Officer, Dec. 28, 2007 (City's Resp. Ex. 1 at 17).

[36]Statement from Historic Preservation Officer, undated (City's Resp. Ex. 1 at 17).

Plaintiff claims that Defendants have violated Article 1 § 17 by destroying its property without offering remuneration or compensation.[37]

Whether a taking or damaging of property has occurred in violation of Article I, § 17 of the Texas Constitution is a question of law. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 644 (Tex. 2004). "It is fundamental that, to recover under the constitutional takings clause, one must first demonstrate an ownership interest in the property taken." *Id.* at 644. A plaintiff must prove that "(1) the government's intentional acts (2) resulted in a taking of the plaintiff's property (3) for public use." *Patel v. City of Everman*, S.W.3d 1, 8 (Tex. App. - Tyler 2004, pet. denied). The term "public use" includes matters of public health and safety. *City of Houston v. Crabb*, 905 S.W.2d 669, 674 (Tex. App.—Houston [14th Dist.] 1995, no writ). While compensation is required in situations that meet the aforementioned requirements, compensation is not required for "loss occasioned by the exercise of the police power." *State v. Spartan's Indus., Inc.*, 447 S.W.2d 407, 413 (Tex. 1969).

Here, it is undisputed that RBIII owned the property.[38] It is also undisputed that the City evaluated the property, declared it in danger of imminent collapse, and demolished it.[39] This Court has ruled that the property posed an imminent threat to life, safety and/or property on the day it was demolished.[40]

---

[37]Pl. 1st Am. Compl. at 9.

[38]Pl's Mot. at 2; City's 2d Mot. at 2.

[39]Pl's Mot. at 1; City's 2d Mot. at 1-2.

[40]Pretrial Conf. Tr. at 19.

15

The City argues that it is not required to provide compensation to RBIII, because the building was a "public nuisance" and therefore the City was justified in using its police power to preserve public safety by demolishing the building.[41]  A governmental entity may defend its taking of a property and need not provide compensation when it proves that the taking was "a great public necessity."  *Patel v City of Everman*, 179 S.W.3d 1, 11 (Tex. App. – Tyler 2004); *City of Houston v. Crabb*, 905 S.W.2d 669, 674 (Tex.App. – Houston 1995); *LJD Properties, Inc. v. City of Greenville*, 753 S.W.2d 204, 207 (Tex.App. – Dallas 1988).  In order to prove a public necessity, the entity must show that the property was a nuisance on the day it was demolished.  *City of Dallas v. Stewart*, 2008 WL 517768, at *2 (Tex.App. – Dallas 2008); *Patel*, 179 S.W.3d at 11; *Crabb*, 905 S.W.2d at 674.  A nuisance exists when a building creates a "hazard to health, safety, comfort, or welfare."  *LJD Properties*, 753 S.W.2d at 207.

This Court has already ruled that the property posed an imminent threat to life, safety and/or property on the date it was demolished, January 10, 2008.[42]  Thus, no factual dispute remains on the issue of whether the property constituted a nuisance on the day it was demolished. Accordingly, the City's action was justified as a use of its police power to protect the public safety, so it is under no obligation to compensate RBIII for demolition of its property pursuant to Article I, § 17 of the Texas Constitution.  Summary judgment is granted in favor of the Defendants on this claim.

---

[41]City's 2d Mot. at 10-12.

[42]Pretrial Conf. Tr. at 19.

16

*4. Article I, Section 19 of the Texas Constitution*

Hernandez and the City both move for summary judgment on RBIII's claims for monetary damages pursuant to Article I, § 19 of the Texas Constitution.[43]  RBIII has neither moved for summary judgment on this claim nor responded to either defendant's motion.  In the *Kinnison* case pending before this Court on similar claims, the Court granted summary judgment on claims for monetary damages under Article I, § 19 of the Texas Constitution, ruling that "Texas Courts have held that the 'due course of law' clause of section 19 provides no private cause of action for damages."  *Kinnison v. City of San Antonio et al.,* No. SA-08-CV-421-XR, Order on Mot. For Summ. J. 15 (Mar. 25, 2010) (citing *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148-49 (Tex. 1995); *Patel v. City of Everman*, 179 S.W.3d 1, 14 (Tex. App. - Tyler 2004, pet. Denied)).  As there is no private right of action under Article I, § 19 of the Texas Constitution, summary judgment is granted for the City and for Hernandez on Plaintiff's claims under this section.

**B.  Reyes Hernandez's Motions for Summary Judgment on Other Grounds**

*1.  Hernandez is entitled to official immunity on all remaining claims against him*

Hernandez argues that he is entitled to official immunity as a matter of law on all of Plaintiff's claims against him.  Official immunity is an affirmative defense that shields government employees from personal liability and encourages them to vigorously perform their official duties without the threat of civil lawsuits that second-guess their decisions.  *Telthorster v. Tennell*, 92 S.W.3d 457, 460-461; *see also Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 423 (Tex. 2004).  It may be applied when a government employee is (1) performing

---

[43]City's 2d Mot. at 10; Hernandez's 2d Mot. at 8.

discretionary duties, (2) within the scope of the employee's authority, (3) as long as the employee is acting in good faith. *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F. 3d 404, 437-38 (5th Cir. 2008) (citing *Telthorster*, 92 S.W.3d at 461). In order for summary judgment to be granted on the basis of official immunity, the defendant must establish that there are no disputed facts material to any of the three elements. *Telthorster*, 92 S.W.3d at 461.

Plaintiff's claims against Hernandez are all based on his alleged knowledge and supervision or control over the decision to demolish RBIII's property. Hernandez served as Supervisor of the Dangerous Premises Section for the City of San Antonio Housing and Neighborhood Services Department.[44] He supervised Dangerous Premises Investigator Irma Ybarra who conducted the investigation of RBIII's property.[45] Hernandez has no independent recollection of receiving or reviewing the file of Ybarra's investigation of RBIII's property.[46] Hernandez states that his normal procedure would be to review the file to ensure it contained all the necessary forms and information, and present it to the Director of the Development Services Department for his consideration.[47] He would have no part in the decision of whether to schedule the property for immediate demolition, and he would not have offered any opinion or recommendation or had any operational control over the demolition.[48]

---

[44] Aff. of Reyes Hernandez 2 (Dec. 18, 2009) (Hernandez's 2d Mot. Ex. 1).

[45] *Id.*; Aff. of Irma Ybarra at 1-2.

[46] Aff. of Reyes Hernandez at 2.

[47] *Id.*

[48] *Id.* at 2-3.

18

Hernandez describes his job duties in detail, and his testimony demonstrates that under his standard operating procedure he would have exercised his discretion in compliance with those duties and fulfilled those duties in good faith.[49]  RBIII has presented no evidence to the contrary.  Hernandez has therefore established the three elements that entitle him to official immunity.  RBIII provides no response to this argument in its motions for summary judgment, and no other evidence before the Court creates any issue of material fact relating to Hernandez's involvement in and performance of his discretionary duties.  Thus, all of RBIII's remaining claims against Hernandez are barred by official immunity.

*2.  Hernandez had no personal involvement in the investigation or demolition of the property*

Hernandez also moves for summary judgment on the basis that Plaintiff can produce no evidence of his involvement in the demolition of the building, so there is no genuine issue of material fact and he is entitled to summary judgment on all of Plaintiff's claims against him under any theory.[50]

RBIII has merely pled that Hernandez was "acting in a supervisory capacity," and that he "intitiated, orchestrated, or at a minimum, had personal knowledge of the demolition."[51]  Hernandez's affidavit states that he has no recollection of receiving or reviewing the file on the property.[52]  He states that he took no part in the decision of whether to schedule the property for demolition, and that he in no way initiated, orchestrated, or had any operational control over the

---

[49]*See id.*

[50]Hernandez's 2d Mot. at 6.

[51]Pl.'s 1st Am. Compl. at 6.

[52]Aff. of Reyes Hernandez at 2.

19

demolition.[53]  Plaintiff has submitted no further evidence to indicate that Hernandez had any actual personal involvement in or knowledge of the demolition process.  There is no genuine issue of material fact regarding Hernandez's knowledge and involvement, and as such he is entitled to summary judgment on all of Plaintiff's claims against him under any theory.

### C. Claims Remaining Only Against the City

*1. Texas Declaratory Judgments Act*

Plaintiff seeks a declaration under the Texas Uniform Declaratory Judgments Act that Chapter 6-175 of the San Antonio Code of Ordinances is unconstitutionally vague, and that it violates the Plaintiff's rights as applied, as alleged in its other claims.[54]  The City moves for summary judgment on Plaintiff's claim under the Texas Declaratory Judgments Act, arguing that (1) the claim has been rendered moot by the City's revisions to the ordinance in October 2008, and (2) the Court lacks jurisdiction to evaluate the constitutionality of the ordinance because Plaintiff failed to serve the Texas Attorney General as required under the Texas Civil Practice and Remedies Code.  TEX. CIV. PRAC. & REM. CODE § 37.006(b) (West 2008).

"A declaratory judgment, by its nature, is forward looking; it is designed to resolve a controversy and prevent future damages.  It affects a party's behavior or alters the parties' legal relationship on a going-forward basis." *Intercontinental Group P'ship v. KB Home Lone Star L.P.*, 95 S.W.3d 650, 660 (Tex. 2009).  "A declaratory judgment requires a justiciable controversy as to the rights and status of parties actually before the court for adjudication, and the declaration sought must actually resolve the controversy." *Brooks v. Northglen Ass'n*, 141

---

[53]*Id.*

[54]Pl's 1st Am. Compl. at 14-15.

S.W.3d 158, 163–64 (Tex. 2004).  "Ordinarily declaratory relief will not be granted where the

cause of action has fully matured and invokes a present remedy at law."  *US Bank, N.A. v.*

*Prestige Ford Garland Ltd. P'ship*, 170 S.W.3d 272, 278 (Tex. App.—Dallas 2005, no pet.).

A case is moot when circumstances change during litigation such that it no longer

presents a case or controversy.  *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23

L.Ed.2d 491 (1969).  The case can be rendered moot "if subsequent events [make] it absolutely

clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Friends of*

*the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S.Ct. 693, 145

L.Ed.2d 610 (2000).

The City amended Chapter 6-175 in October 2008.  There is nothing in the record

to support an allegation that the City would invite future litigation by reenacting the previously

challenged statute.  Consequently, Plaintiff's request for declaratory judgment that the previous

ordinance is unconstitutional or that it fails to meet the requirements of the Texas Local

Government Code is moot.

*2.  Fourteenth Amendment of the Constitution of the United States*

Procedural Due Process

The Fourteenth Amendment of the U.S. Constitution prohibits a state from depriving a

person "of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV, § 1.

In the *Kinnison* case also before this Court on similar claims, the Court outlined the requisite

standards for a party to bring a Fourteenth Amendment claim for a violation of procedural due

process:

> Procedural due-process guarantees are invoked when a state actor
> deprives an individual of a protected life, liberty, or property

21

interest. *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001) ("To bring a procedural due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest."). The government must provide reasonable notice to an individual of its intention to deprive him of life, liberty, or property. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313–15, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The individual must have a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Mullane*, 339 U.S. at 313–14, 70 S.Ct. 652. Moreover, "[a]s the Supreme Court has acknowledged, 'the public interest demands that all dangerous conditions be prevented or abated.'" *Freeman v. City of Dallas*, 242 F.3d 642, 652 (5th Cir. 2001) (quoting *Camara v. Mun. Court of City & County of S.F.*, 587 U.S. 523, 537, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)). Prior notice and a hearing is not constitutionally required when there are exigent circumstances that prevent the government from providing a pre-deprivation process. *See Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 677–80, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); *Freeman v. City of Dallas*, 186 F.3d 601, 607 (5th Cir. 1999) ("[W]hen pre-deprivation procedural safeguards cannot be expected to protect against the type of deprivation involved, we find that a post-deprivation hearing satisfies due process."). Deprivations of property do not violate the Due Process Clause if adequate and meaningful post-deprivation remedies are available. *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984).

*Kinnison v. City of San Antonio et al.,* No. SA-08-CV-421-XR, Order on Motion for Summary Judgment (Mar. 25, 2010). The Supreme Court has "recognized that prior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide 'notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 795, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).

RBIII, as the legal owner of the structures demolished by the City, has a legally protected interest.  It is not disputed that the City demolished the structure on RBIII's property.  Prior to taking that action, the City was required to provide notice reasonably calculated to apprise RBIII of the planned demolition and afford him an opportunity to present his objections.

The City argues that "[p]rior notice and hearing are not constitutionally required when there are exigent circumstances that prevent the government from providing a pre-deprivation process,"[55] and that in this case "exigent circumstances necessitated the emergency demolition without notice."[56]  The Supreme Court has noted that "[t]here are extraordinary situations that justify postponing notice and opportunity for a hearing.  These situations, however, must be truly unusual.  Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing."  *Fuentes v. Shevin*, 407 U.S. 67, 89-91 (1972).  One of these situations is when there is a "special need for very prompt action," *id.*, where "some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780 (1971).

The issue here is whether an emergency situation existed that warranted the demolition of the property without any pre-deprivation notice.  If no emergency existed to justify the City's demolition of the structure on RBIII's property without notice, then the City's actions failed to provide RBIII with procedural due process.  This Court has ruled that the structure was an imminent threat to life, safety and/or property on the date it was demolished.  The circumstances

---

[55]City's Resp. Mot.at 8.

[56]City's 2d. Mot. at 12.

of this case, however, do not fall within the very small exception of emergency cases in which no notice is required.  Such demolition without prior notice has been upheld in situations where a demolition was deemed so urgent that the structures were demolished in the same day that they were inspected.[57]  This is not such an urgent, same-day sort of situation.  Here, several factors indicate that pre-deprivation notice was possible, including the time elapsed from the initial inspection to the demolition, Ybarra's two identifications of the property owner of record, and the fact that notice was sent to RBIII the day following the demolition.

The issue is then whether the City provided any pre-deprivation notice, and if so, whether that notice was sufficient to comply with the requirements of procedural due process.  Dangerous Premises Investigator Irma Ybarra inspected the structure on RBIII's property and recommended it for demolition on December 28, 2007.[58]  Building Inspector Ramiro Carrillo also inspected the property that day, and the inspection report and recommendation were then processed through the City's procedure for review.[59]  Inspector Irma Ybarra also searched the ownership and tax system records on December 28,2007, and determined that Alamo City Ventures, LC was the record

---

[57] For example, in *Harris v. City of Akron*, 20 F.3d 1396 (6th Cir. 1994), a building was found to be in immediate danger of collapse onto a street and neighboring occupied home, and it was accordingly demolished within six hours of inspection.  In *Kshel Realty Corp. v. City of New York*, No. 01 Civ. 9139(LMM), 2006 WL 2506389 (S.D.N.Y. Aug. 30, 2006), the city ordered demolition of a building on the same day that a portion of its facade collapsed into a vacant area adjoining the building.

[58] Aff. of Irma Ybarra at 1; Investigator's Report Form - Abatement of Dangerous Premises (City's Resp. Ex.1 at 6)

[59] Aff. of Irma Ybarra and attached exhibits (City's Resp. Ex. 1 at 1-20); Aff. of Ramiro Carillo 3 (City's Resp. Mot. Ex. 2 at 1-4).

owner of the property on that date.[60]  The report that Ybarra consulted identified the owner of the

property as Alamo City Ventures, LC, however, the second page of the report also clearly

indicated that the property had been transferred by warranty deed from Alamo City Ventures, LC

to RBIII, LP on September 20, 2007.[61]  Thus, Ybarra and the City should have been aware that

RBIII was the actual owner of the property on December 28, 2007.  It is the City's own error that

prevented it from properly identifying the owner at that time.  There is no evidence indicating

whether the City attempted to provide notice to either Alamo City Ventures or RBIII of the

pending investigation and potential demolition of the structure after consulting the tax records on

December 28, 2007.

On January 3, 2008, Director of Development Services Department Roderick Sanchez

declared that the property presented a clear and immediate danger to life, safety, and/or property,

and that no other abatement procedure was reasonably available under the circumstances.[62]  The

same day, Director of Housing and Neighborhood Services David Garza declared the same

findings.[63]  Both Sanchez and Garza again stated the same conclusions on January 7, 2008.[64]  The

---

[60]Aff. of Irma Ybarra at 3.

[61]Bexar CAD Property Search Results > 369739 Alamo City Ventures LC, Dec. 28, 2007
(City's Resp. Mot. Ex. 1 at 34).

[62]Aff. of Roderick J. Sanchez, Jan. 3, 2008 (City's Resp. Mot. Ex. 1 at 14).

[63]Aff. of David Garza, Jan. 3, 2008 (City's Resp.Mot. Ex. 1 at 16).

[64]Aff. of Roderick J. Sanchez, Jan. 7, 2008 (City's Resp.Mot. Ex. 1 at 15); Aff. of David
Garza, Jan. 7, 2008 (City's Resp. Mot Ex. 1 at 13).

demolition of the structure was ordered on January 10, 2008,[65] 13 days after the initial inspection

of the property, and 3 days after the official decision to demolish the property.  There is no

evidence regarding whether the City provided notice to Alamo City Ventures or RBIII at any time

prior to the demolition.

On January 11, 2008, Ybarra checked the property owner records again, and noted that as

of that date RBIII was listed as the record owner of the property.[66]  The tax records had apparently

by that time been updated to reflect RBIII as the proper owner of the property.[67]  Notice of the

demolition was sent to RBIII on January 11, 2008, one day after the structure was demolished.[68]

The City's error in identifying the proper owner on December 28, 2007 does not excuse

them from providing notice.  There is no evidence as to whether the City tried to provide notice to

Alamo City Ventures which it had identified as the owner of record prior to the investigation and

demolition process.  Furthermore, there is no evidence of whether the City attempted to provide

any contemporaneous notice of demolition to either Alamo City Ventures or RBIII.  Pre-

deprivation notice or process would not have been impossible or impracticable because the City

could have proceeded under provisions for declaring the property a nuisance as outlined in Texas

---

[65]Demolition Work Orders signed by David Garza, Director of Housing and Neighborhood Services, Jan. 10, 2008 (City's Resp. Ex. 1 at 18-20).

[66]Aff. of Irma Ybarra at 4.

[67]Identical information appeared on the second page of that report as on the second page of the December 28 report, indicating that Alamo City Ventures granted the property to RBIII by warranty deed on September 30, 2007.  Bexar CAD Property Search Results > 369739 RBIII LP, Jan. 11, 2008 (City's Resp. Mot. Ex. 1 at 44-45).

[68]Aff. of Irma Ybarra at 4; Notice Summary Abatement - Emergency Demolition, Jan. 11, 2008 (City's Resp. Ex. 1 at 26).

26

law.  The City has presented no evidence indicating that it was prevented or prohibited from issuing pre-deprivation notice.

Thus, the Court finds that, due to the lack of evidence regarding the City's attempts to provide notice to either Alamo City Ventures or RBIII prior to demolition of the structure, there remains an issue of material fact relating to the Plaintiff's claim that the City violated its procedural due process.  Summary judgment is denied to both parties on the claim that RBIII's Fourteenth Amendment right to procedural due process was violated.

Substantive Due Process

RBIII alleges that 6-175 violates its substantive due process rights because it is based on "unconstitutionally vague criteria" and allows no notice to the property owner for any intended demolition.[69]  The City moves for summary judgment on this claim, noting that it "appears to be based on [the] claim that Chapter 6-175 of the city Code has unconstitutionally vague criteria."[70]  The Court reads Plaintiff's motion for summary judgment and its response to the City's motion as a claim based on vagueness.  Plaintiff does not provide any further facts or allegations that would distinguish this claim from the claim that the ordinance is unconstitutionally vague.  As noted above, the City has amended its ordinance so that this claim is moot.  *See supra* Part C(1).  Accordingly, the City's motion for summary judgment on this claim is granted.

---

[69]Pl.'s 1st Am. Compl. at 6.

[70]City's Resp. Mot. at 13.

<u>Equal Protection</u>

RBIII also alleges that the Defendants failed to follow the provisions of Chapter 6-175, or that it applied them on an "*ad hoc*, capricious basis," amounting to a violation of equal protection.[71]  The City moves for summary judgment on this claim, and RBIII does not respond to the City's motion.  An equal protection claim based on a "class of one" is available only to plaintiffs that can show (1) different treatment from those similarly situated and (2) no rational basis for the disparate treatment.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).  The only example that Plaintiff has alleged of another similarly situated property owner is that of Chance Kinnison, owner of a property that is the subject of another case pending before this Court.  Kinnison's property was in fact subjected to the same summary abatement process as RBIII's property.  Plaintiff has provided no evidence that it was treated differently than Kinnison or any other property owner.  Thus, summary judgment is granted in favor of the City on Plaintiff's claim for violation of the equal protection clause.

3. *Fifth Amendment of the Constitution of the United States*

"The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth, provides that private property shall not 'be taken for public use, without just compensation.'"  *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536, 125 S. Ct. 2074, 161 L.Ed.2d 876 (2005).  Compensation is not required if the property constituted a nuisance.  *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1029, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992); *see also Vulcan Materials Co. v. City of Tehuacana*, 369 F.3d 882, 892 (5th Cir. 2004) ("Thus, under federal law,

---

[71]Pl.'s 1st Am. Compl. at 6.

even if the current value of the claimant's property has been destroyed, the claimant cannot recover if the 'background principles of the State's law of property and nuisance' would have prohibited that activity as a nuisance (the 'nuisance exception')." (quoting *Lucas*, 505 U.S. at 1029)).

As previously noted, the Court has ruled that the property was an imminent threat to life, safety, and/or property on the day that it was demolished.  This Court has already determined that the property was a public nuisance that the government was justified in destroying by virtue of its police powers.  *See supra* Part A(3).  Thus, the structure fell within the "nuisance" exception to required compensation under the Fifth Amendment.  Summary judgment is granted in favor of the City on the Fifth Amendment takings claim.

*4.  Fourth Amendment of the Constitution of the United States*

Plaintiff claims that the City unreasonably seized its property without a warrant, thereby violating the Fourth Amendment by violating guarantees of both its procedural and substantive due process.[72]  Plaintiff moves for summary judgment on this claim on the basis that 1) the procedures detailed in Chapter 6-175 are vague and arbitrary, and 2) the City failed to comply with those procedures.[73]  The City argues that 1) the Plaintiff fails to provide any further facts to support a vagueness challenge, 2) the City did in fact comply with the requirements of Chapter 6-175, and 3) no *per se* warrant requirement exists under the Fourth Amendment when a government entity seizes and destroys a property that is determined to be a public nuisance.[74]  The

[72]Pl.'s 1st Am. Compl. at 12.

[73]Pl.'s Mot. at 10.

[74]City's Resp. Mot. at 9-10.

29

City also moves for summary judgment on the basis that no requirement for a warrant exists under the Fourth Amendment for the demolition of a public nuisance.[75]

As noted above, the claim that Chapter 6-175 is unconstitutionally vague is moot.  *See supra* Part C(1).  Furthermore, the City has established that it complied with the requirements of Chapter 6-175.  *See supra* Part A(1).  The only remaining Fourth Amendment issue is the permissibility of the destruction of the property without a warrant.

The Fourth Amendment of the U.S. Constitution, made applicable to the States by the Fourteenth Amendment, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall be violated..."  U.S. Const. Amend. IV; *Ker v. California,* 374 U.S. 23, 30-34, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). "A 'seizure' of property...occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984)).

The lack of a warrant is not at issue.  The Fifth Circuit has held that the existence of a warrant is not necessary "to effectuate a valid seizure and demolition of the nuisance structures, [but] the fundamental Fourth Amendment question of reasonableness remains, a question decided by balancing the public and private interests at stake."  *Freeman v. City of Dallas*, 242 F.3d 642, 649 (5th Cir. 2001) (en banc), *cert. denied*, 534 U.S. 817, 122 S.Ct. 47, 151 L.Ed.2d 18.  The

---

[75]City's 2d Mot. at 14-15.

Court's inquiry into RBIII's claim therefore focuses on the reasonableness of the City's actions by evaluating the public and private interests at stake.

The Fourth Amendment protects the property owner's private interests and expectations of privacy that society recognizes as legitimate.  *Id.* at 653 (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 328, 105 S.Ct. 733, 741, 83 L.Ed.2d 720 (1984)).  As the owner of an unsecured, vacant, dilapidated property, RBIII's expectation of privacy is diminished in relation to those of other property owners.  Since the property was uninhabited and vacant when City inspectors entered to investigate the structure's safety, the inspections did not invade RBIII's privacy.  However, RBIII still maintained a private interest in the structure on the property.

The public interest in demolishing a property that was an imminent threat to life, safety and/or property is strong.  "'The public interest demands that all dangerous conditions be prevented or abated.'" *Id.* at 652 (quoting *Camara v. Mun. Ct. of San Francisco,* 387 U.S. 523, 537, 87 S.Ct. 1727, 18 L.Ed.2d 930).  It is reasonable for the City to maintain minimum property maintenance standards to protect persons and neighboring property.  "[A] city may not arbitrarily enter abatement orders or declare the existence of nuisances with no underlying standards." *Id.* at 652-53.

The City determined that RBIII's property was a public nuisance and destroyed it in the exercise of its police powers.  *Supra* Part A(3).  While the determination that the structures on Kinnison's property constituted a nuisance is reasonable, the City's delay in demolishing the structure after initially determining that the property required immediate demolition undercuts the reasonableness of the City's actions.  *Cf. Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) (discussing exigent circumstance that justify warrantless entry, such as a

burning building).  Furthermore, as noted above in Section C(2), *supra,* there are still unresolved

factual issues regarding whether the City provided sufficient notice, opportunity to contest the

determination, time to repair the property, or chance to seek any other remedies, hearings, or other

review.  The determination of whether the City provided RBIII with procedural due process will

significantly affect the determination of whether the City's demolition of the property was

reasonable.  Thus, the Court finds that there remain disputed issues of material fact relating to

RBIII's claim that the City violated its Fourth Amendment right to be free from unreasonable

seizures of property.  Both RBIII's motion for summary judgment and the City's motion for

summary judgment on this claim are denied.

*5.  International Torts: Trespass to Land and Intrusion on Seclusion*

       Plaintiff alleges that the demolition of its property amounted to both a trespass to land and

intrusion on seclusion under state tort law.[76]  The City moves for summary judgment and asserts

that it is entitled to sovereign immunity against both claims because they are intentional torts.[77]

Under Texas Civil Practice & Remedies Code § 101.057(2), the waiver of sovereign immunity

does not extend to intentional torts.  TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2) (West

2005).  The City has asserted its sovereign immunity and RBIII is thus barred from pursuing these

intentional tort claims.  Summary judgment is granted in favor of the City on these claims.

---

[76]Pl. 1st Am. Compl. at 13-14.

[77]City's 2d Mot. at 16.

*6. Injury by Motor Vehicle or Equipment*

Plaintiffs allege that the City's demolition of its property amounted to negligent use of a motor vehicle or motor-driven equipment.[78]  The City asserts that it is protected by sovereign immunity, and that the Plaintiff's negligence claim simply reframes an intentional act into a negligent one in an effort to fall under the limited waiver of immunity provided by the Texas Tort Claims Act.[79]

The Texas Tort Claims Act bars claims for intentional torts against governmental entities even if the facts that would show an intentional tort are framed as a claim for negligence.  *See Harris County v. Cabazos*, 177 S.W.3d 105, 111 (Tex. App.-Houston [1st Dist.] 2005, no pet.); *see also Coldwell v. City of Deer Park*, No. H-06-01094, 2007 WL 2021769 (S.D. Tex. July 9, 2007) (stating that the plaintiff's state tort claims hinged on intentional conduct and were barred by the Texas Tort Claims Act).  "A plaintiff cannot circumvent the intentional tort exception by couching his claims in terms of negligence." *Cabazos*, 177 S.W.3d at 111.  Here, RBIII alleges that the City demolished the structure on its property after declaring it to be an imminent danger.  This was an intentional act.  RBIII presents no evidence to demonstrate a claim for negligence.  Because the City has asserted its sovereign immunity, and RBIII cannot maintain his claims under the Texas Tort Claims Act, the City is a entitled to summary judgment.

---

[78]Pl.'s 1st Am. Compl. at 12-13.

[79]City's 2d Mot. at 15-16.

**Conclusion**

Defendant Reyes Hernandez's motion for summary judgment is GRANTED.  Plaintiff RBIII's motion for summary judgment is DENIED.  Defendant City of San Antonio's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

Summary judgment is granted for Hernandez on all claims.  Summary judgment is granted for the City on RBIII's claims for liability under San Antonio Ordinance Chapter 6-175; liability under § 214 of the Texas Local Government Code; violation of Article I, § 17 and Article I, § 19 of the Texas Constitution; violation of the Takings Clause of the Fifth Amendment; and violations of substantive due process and equal protection under the Fourteenth Amendment.  The Court denies summary judgment to both RBIII and the City on claims that the City violated RBIII's procedural due process under the Fourteenth Amendment and that the City conducted an unreasonable seizure of its property in violation of the Fourth Amendment.

It is so ORDERED.

SIGNED this 3rd day of September, 2010.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE