UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RBIII, LP, | § | |
| *Plaintiff*, | § § § | |
| v. | § § | Civil Action No. SA-09-CV-119-XR |
| CITY OF SAN ANTONIO, | § § § | |
| *Defendant*. | § § | |

**ORDER ON COSTS AND MOTION FOR ATTORNEY'S FEES**

On this day, the Court considered Plaintiff's Motion for Attorney's Fees and Costs (Docket Entry No. 130), Plaintiff's Supplemental Motion for Attorney's Fees and Costs (Docket Entry No. 131), City of San Antonio's Objections to Plaintiff's Motion for Attorney's Fees and Costs (Docket Entry No. 132), and Plaintiff's Response to City of San Antonio's Objections to Plaintiff's Motion for Attorney's Fees and Costs (Docket Entry No. 133). Having considered the documents and the relevant authority the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for attorney fees and costs.

**Background**

The case involves the demolition of a structure at 814 South Nueces Street, in San Antonio, Texas. Plaintiff RBIII, LP ("RBIII") purchased the property with the intention to renovate and improve the real property at 814 South Nueces Street. In late October or early November 2007, Steven Gragg, one of RBIII's partners, visited the property to obtain bids from contractors. In late December 2007 or early January 2008, Gragg returned to place a "for sale" sign up at the site. There

was no evidence that any repairs were made.

On December 28, 2007, Irma Ybarra, Dangerous Premises Investigator for Defendant City of San Antonio ("the City"), inspected the house at 814 South Nueces after receiving complaints from neighbors that vagrants were entering the property. After inspection, she questioned the stability of the structure and she requested the City's building inspector evaluate the house because she suspected it posed a clear and imminent danger to the public. The building inspector, Ramiro Carillo, visited 814 South Nueces and found it to be a dangerous premise posing a clear and imminent danger to the public.

After evaluating the pictures, report and recommendation of the inspectors, the City's Director of Developmental Services and the City's Director of Housing and Neighborhood Services, Roderick J. Sanchez and David D. Garza, signed affidavits declaring that the structure at 814 South Nueces presented a "clear and imminent threat to life, safety, and/or property necessitating an immediate demolition."[1] The City demolished the structure on January 10, 2008.

RBIII filed suit against the City and Reyes Hernandez, Supervisor of the Dangerous Premises Section for the City of San Antonio Housing & Neighborhood Services Department, in his individual and official capacity. The First Amended Complaint asserted numerous causes of action against all parties, including violations of Section 6-175 of the City's Code of Ordinances; violation of Chapter 214 of the Texas Local Government Code; violation of Article I, Sections 17 and 19 of the Texas Constitution; violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983; "injury by motor vehicle or equipment"; trespass to real

---

[1] Aff. Of Roderick J. Sanchez, Jan. 3, 2008 and Jan. 7, 2008 (City's Resp. Mot. Ex. 1, pp. 14, 15); Affs. Of David D. Garza, Jan. 3, 2008 and Jan. 7, 2008 (City's Resp. Mot. Ex. 1, pp. 13, 16).

property; intrusion on seclusion; and a request for declaratory relief.

## Procedural History

RBIII filed suit against the City and Hernandez in the 228th Judicial District Court of Bexar County, Texas.[2] Defendants timely removed this case.[3] Hernandez filed a motion to dismiss on April 3, 2009,[4] and RBIII filed a motion for leave to amend its complaint on May 14, 2009.[5] The court issued an order granting the motion for leave to amend and dismissing RBIII's claims against Hernandez in his official capacity, the Fourth Amendment claims against Hernandez based on the failure to procure a warrant, and the substantive due process claims against Hernandez based on the alleged vagueness of the ordinance.[6] RBIII amended its complaint,[7] and Hernandez filed a motion for summary judgment[8] to which RBIII failed to respond. The City moved to dismiss the state law claims against Hernandez,[9] and RBIII responded to the City's arguments.[10] On February 19, 2010, the Court granted Hernandez's motion for summary judgment and dismissed RBIII's claims against

---

[2] Pl.'s Original Pet., Jan. 28, 2009 (attached as exhibit to Docket Entry No. 1).

[3] Notice of Removal, Feb. 12, 2009 (Docket Entry No. 1).

[4] Def. Hernandez's Mot. to Dismiss, April 3, 2009 (Docket Entry No. 13).

[5] Mot. for Leave to Am. Compl., May 14, 2009 (Docket Entry No. 19).

[6] Order on Mot. to Dismiss and Mot. for Leave to Amend Compl., June 16, 2009 (Docket Entry No. 21).

[7] Pl.'s 1st Am. Compl., June 16, 2009 (Docket Entry No. 22).

[8] Def. Hernandez's 1st Mot. for Summ. J., Dec. 18, 2009 (Docket Entry No. 37).

[9] Def. City's 1st Mot. for Summ. J. 18-19, Dec. 18, 2009 (Docket Entry No. 38).

[10] Pl.'s Resp. to City of San Antonio's 1st Mot. for Summ. J. 16, Jan. 25, 2010 (Docket Entry No. 45).

Hernandez for violations of procedural due process and equal protection of the Fourteenth Amendment and the takings clause of the Fifth Amendment.[11] The Court also granted the City's motion to dismiss in part dismissing the state tort law claims against Hernandez.

In a hearing on February 25, 2010, the Court orally granted summary judgment in part for the City, ruling that on January 10, 2008, "the building posed an imminent threat to life, safety and/or property."[12] The Court also permitted the parties to file new motions for summary judgment. Both the City and Hernandez filed new motions for summary judgment on April 5, 2010.[13] Plaintiff also filed a motion for summary judgment against the City and Hernandez on April 5, 2010.[14] The Court granted Hernandez's motion for summary judgment on all claims. On September 3, 2010, the Court granted summary judgment for the City on RBIII's claims for liability under San Antonio Ordinance Chapter 6-175; liability under § 214 of the Texas Local Government Code; violation of Article I, § 17 and Article I, § 19 of the Texas Constitution; violation of the Takings Clause of the Fifth Amendment; and violations of substantive due process and equal protection under the Fourteenth Amendment. The only remaining claims were RBIII's claims against the City for violation of RBIII's procedural due process under the Fourteenth Amendment and the claim that the City conducted an unreasonable seizure of its property in violation of the Fourteenth Amendment.

The case was tried before a jury from March 28, 2011 through March 30, 2011. On March

---

[11]Order on Mot. for Summ. J. and Mot. to Dismiss, Feb. 19, 2010 (Docket Entry No. 70).

[12]Pretrial Conf. Tr. 19, February 25, 2010 (Docket Entry No. 75).

[13]Def. City's 2d Mot. for Summ. J., Apr. 5, 2010 (Docket Entry No. 76) ("City's 2d Mot."), Def. Hernandez's 2d Mot. for Summ. J., Apr. 5, 2010 (Docket Entry No. 77) ("Hernandez's 2d Mot.").

[14]Pl.'s Mot. for Summ. J., Apr. 5, 2010 (Docket Entry No. 78) ("Pl.'s Mot.").

30, 2011, a jury reached a verdict on all questions of liability submitted and awarded $27,500 in compensation for the City's violations of RBIII's Fourth and Fourteenth Amendment rights. The Fourth and Fourteenth Amendment claims against the City were the only claims which RBIII prevailed on. On April 14, 2011, RBIII submitted a motion for attorney's fees and costs, requesting an aggregate total of $72,335.88 in fees and costs.[15]

## Legal Standard

Rule 54(d) of the Federal Rules of Civil Procedure provides that costs "shall be allowed as of course to the prevailing party." FED. R. CIV. P. 54(d). 28 U.S.C. § 1920 defines the term "costs" as used in Rule 54(d) and enumerates the expenses that a federal court may tax as a cost under the authority found in Rule 54(d). *Gaddis v. United States*, 381 F.3d 444, 450 (5th Cir. 2004); *see also Crawford Fitting Co. v. Gibbons*, 482 U.S. 437, 441 (1987). Thus, unless otherwise authorized by statute, the types of costs that may be awarded under Rule 54(d) are limited to those enumerated in 28 U.S.C. § 1920, which provides:

> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C.A. § 1920.

For attorney's fees, an award is governed by the same law that serves as the rule of decision

---

[15]Pl.'s Mot. for Attorney's Fees and Costs, April 14, 2011 (Docket Entry No. 130).

5

for the substantive issues in the case. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). A prevailing party in a 42 U.S.C. § 1983 claim may be entitled to an award of attorney's fees. 42 U.S.C. § 1988(b). Such an award must be proportional, and only to compensate time "reasonably expended" in pursuance of the claims. *Hensley v. Eckhart*, 461 U.S. 424, 432 (1983). The Court has discretion in determining the proper amount of a fee award. *Id.* at 437; *see also Watkins v. Fordice*, 7 F.3d 453 (5th Cir. 1993).

The Court will determine the appropriate award amount by calculating the "lodestar": the number of hours reasonably spent on the litigation multiplied by a reasonable hourly billing rate. *Watkins,* 7 F3d at 457 (citing *Hensley*, 461 U.S. at 434); *See Hensley*, 461 U.S. at 433-436. As a rule of thumb for the reasonableness of attorney's fees, the Court will use the factor test outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Watkins*, 7 F.3d at 457. The *Johnson* factors are:

(1) the time and labor required;

(2) the novelty and difficulty of the legal questions;

(3) the requisite skill to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee for similar work in the community;

(6) whether the fee is fixed or contingent;

(7) any time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the attorney's professional relationship with the client; and

(12) awards in similar cases.

*Johnson,* 488 F.2d at 717-719.

The lodestar is presumptively reasonable, but may be modified in exceptional cases to account for any relevant *Johnson* factors that are not reflected in the lodestar. *Shipes v. Trinity Industries*, 987 F.2d 311, 320 (5th Cir. 1993). Any such adjustment must be justified by specific evidentiary findings and reasoning. *Id.*

## Analysis

Plaintiff has filed a bill of costs and a motion for attorney's fees. The Court evaluates each independently.

## I. Bill of Costs

Plaintiff seeks a total of $2,078.38 in costs: $503.00 for "Fees/transcripts/etc.," $7.36 for "PACER charges," $51.77 for "Postage," and $1,516.25 for "Copies."[16] Many of the charges and expenses that Plaintiff's counsel is seeking are not explicitly stated as recoverable under any of the 28 U.S.C. § 1920 categories and Plaintiff's counsel has not provided any reason or cited any case law that would permit this court to award such fees and costs. "The Supreme Court has indicated that federal courts may only award those costs articulated in section 1920 absent explicit statutory or contractual authorization to the contrary." *Gagnon v. United Technisource Inc.*, 607 F.3d 1036, 1045 (5th Cir. 2010); *see also Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987).

---

[16]RBIII, LP v. COSA Litigation Expense Table, April 14, 2011 (Ex. A-1 to Pl.'s Mot. for Attorney's Fees (Docket Entry No. 130)).

Additionally, the Bill of Costs is not accompanied by any receipts or other proof justifying the claimed costs, and the affidavit submitted by Plaintiff's counsel does not address the basis of these charges.[17] Particularly glaring is Plaintiff's counsel's request for reimbursement for an aggregate total of 5,865 black and white copied and 50 color copies, for a total cost of $1,516.25. Aside from how many copies were made, Plaintiff's counsel has not identified what the copies were for and whether they were necessary for the case. While the Court does not expect counsel to identify every individual copy made, the Court does "require some demonstration that reproduction costs necessarily result[ed] from [this] litigation." *Fogleman v. ARAMCO (Arabian American Oil Co.)*, 920 F.2d 278, 286 (5th Cir. 1991).

Accordingly, Plaintiff is ORDERED to submit proof of the costs he requests to be taxed against Defendant, and to justify the costs under the appropriate 28 U.S.C. § 1920 category.

**II. Attorney's Fees**

Plaintiff seeks a total of $70,357.50 in attorney fees.[18] Based on this Court's ruling on the *Kinnison* fee application, Plaintiff's counsel is not seeking an upwards deviation of his Attorney's Fees in consideration of the *Johnson* factors. *See Kinnison v. City of San Antonio* 2011 WL 1399094 (W.D. Tex. April 12, 2011). Plaintiff's counsel is seeking attorney's fees based on his hourly rate of $250 per hour, which he believes to be customary, "quite conservative and [a] reasonable fee in the Western District of Texas, San Antonio Division,"[19] and a number

---

[17] Aff. of S. Tyler Rutherford, April 14, 2011 (Ex. A to Pl.'s Mot. for Attorney's Fees).

[18] Pl.'s Mot. for Attorney's Fees at 2.

[19] Aff. of S. Tyler Rutherford, April 14, 2011 (Ex. A to Pl.'s Mot. for Attorney's Fees).

of hours totaling 276.6 hours.[20]

The City objects to the motion because (1) the claimed $250 hourly rate is excessive; (2) the number of hours expended were excessive to what was necessary to prepare and try the case; (3) Plaintiffs' counsel failed to exercise proper billing judgment; (4) Plaintiff did not prevail on all claims nor against all parties, and (5) Plaintiff has made no effort to segregate fees between claims according to parties, prevailing claims, or damages.

## A. Hourly Rate

The affidavit submitted by Plaintiff's counsel asserts that his $250 hourly rate is customary and that friends of colleagues of Plaintiff's counsel "bill civil litigation out at $400.00, $600.00, even $800.00."[21] Plaintiff's counsel also provided an affidavit of Chris Gale who stated that "in [his] opinion as a frequent litigator in the federal courts, $250.00 per hour is a reasonable rate for services such as those provided by RBIII."[22] Presumably, Mr. Gale intended to say that "$250 per hour is a reasonable rate for services such as those provided *to* RBIII." Plaintiff's counsel also attached the 2009 State Bar of Texas Hourly Rate Fact Sheet, which reflects an average hourly rate of $207 for attorneys in the San Antonio metropolitan area with between 11 and 15 years of experience.[23] Plaintiff's counsel attached his work history which demonstrates an

---

[20]RBIII, LP v. COSA Attorney and Legal Assistant Time Table ("Time Table") (Ex. A-1 to Pl.'s Mot. for Attorney's Fees).

[21]Aff. of S. Tyler Rutherford, April 14, 2011 (Ex. A to Pl.'s Mot. for Attorney's Fees).

[22]Aff. of Chris Gale, April 14, 2011 (Ex. 1 to Pl.'s Supp. Mot. for Attorney's Fees and Costs (Docket Entry No. 131)).

[23]State Bar of Texas Hourly Rate Fact Sheet, 2009 (Ex. A-3 to Pl.'s Mot. for Attorney's Fees and Costs).

experience level of 14 years.[24] The City noted that the hourly rate charged by this Court for court-appointed counsel is $125 per hour and that, comparatively, Plaintiff's counsel's rate is twice that amount. The City further asserts that the requested rate is unreasonable considering Plaintiff's counsel only recently obtained his license to practice in federal court and that at most should award a rate between $125 and $165 per hour.

The Court must also take into account the *Johnson* factors. Plaintiff's counsel's 14 years of experience as a practicing attorney in Bexar County do not constitute exceptional "ability, reputation, or experience" worthy of increasing the hourly rate. *See Johnson*, 488 F.2d at 717-719. Nor is the Court persuaded that the nature of this case was particularly undesirable, or that it has required such a large amount of counsel's time that it has precluded him from other employment. *See id.* Thus, the Court concludes that the *Johnson* factors weigh in favor of applying the average hourly rate for the region.

Further, in the *Kinnison* Order on Costs and Motion for Attorney's Fees on April 12, 2011, the Court found Plaintiff's counsel's $250 fee to be unreasonable and instead found that the $207 average hourly rate would be a reasonable fee for Plaintiff's counsel. *Kinnison*, 2011 WL 1399094 at 4. The Court does not see any substantial change in argument or circumstances from *Kinnison* in the past three months that would permit a deviation from the Court's prior ruling. Accordingly, the Court will use an hourly rate of $207 to calculate the lodestar.

**B. Hours Billed**

It appears from the time table provided by Plaintiff's counsel that Plaintiff seeks an award

---

[24]S. Tyler Rutherford, B.A., J.D. (Ex. A-4 to Pl.'s Mot. for Attorney's Fees and Costs).

for all hours billed in relation to this litigation.[25] The City objects to the number of hours billed, arguing that Plaintiff's counsel failed to exercise proper billing judgment, Plaintiff did not prevail on all claims or against all parties, and that Plaintiff's counsel made no effort to segregate attorney's fees.[26]

The Court must determine the appropriate compensable hours based on the attorney's time records, and compensate only for those hours reasonably spent in relation to prevailing claims. *Shipes*, 987 F.2d at 319 (*citing Alberti v. Klevenhagen*, 895 F.2d 927, 930 (5th Cir. 1990), *vacated in part*, 903 F.2d 352 (5th Cir. 1990)). If a party raises unrelated claims and does not prevail on them, they are treated as if they had been raised in separate lawsuits. *Hensley*, 461 U.S. at 434. Furthermore, even when claims are interrelated, it is not always reasonable to award attorneys fees based on the whole of the hours spent on the litigation. *Id.* at 436. Rather, the critical factor is the degree of success achieved by the prevailing party. *Id.* The Court may either try to identify specific hours that should be eliminated from the total, or may simply reduce the total amount of the award in relation to the limited success obtained. *Id.*

Here, Plaintiff asserted eleven separate causes of action against both the City and Reyes Hernandez in his individual and official capacity. All claims against Reyes Hernandez were either dismissed or resolved in Hernandez's favor on the merits through dispositive motions. All but two claims against the City were either dismissed or resolved in the City's favor on the merits through dispositive motions. A jury found in favor of the Plaintiff on the remaining two

---

[25]Time Table, (Ex. A-1 to Pl.'s Mot. for Attorney's Fees and Costs).

[26]City of San Antonio's Objections to Plaintiff's Motion for Attorney's Fees and Costs (Docket Entry No. 132).

claims against the City. Although all the claims arose from the same specific factual basis, the legal theories underlying several of the nine unsuccessful claims are quite distinct from those implicated in the two successful claims. Plaintiff prevailed on a relatively small percentage of the total claims presented.

Plaintiff's motion for attorney's fees does not segregate the fees according to parties or claims. The calculations submitted as support for Plaintiff's motions show a total of 276.6 attorney hours billed and 32.2 legal assistant hours billed for the entirety of the case.[27] The Court notes that some of this time was dedicated to activities that cannot easily be segregated, such as depositions and trial. Even so, the number of hours billed should be reduced to reflect that Plaintiff prevailed on only a small number of its claims and assertions against only one party. It is noteworthy that the billing from July 7, 2008 to September 3, 2010 includes billing with regard to Reyes Hernandez, a party against whom Plaintiff did not prevail, as well as billing for eight out of eleven claims against the City that were unsuccessful.

The Court has independently reviewed the time logs submitted by Plaintiff's counsel, and subtracted those time entries relating to non-prevailing claims. The Court has also reduced the total number of recorded hours for several entries which were not segregated between claims or defendants. Finally, the Court has also reduced the time recorded for a number of entries which the Court finds to be excessive and/or duplicative. Accounting for these modification, the Court calculates a total of 128.2 attorney hours expended on the litigation. At a rate of $207 per hour, this results in a total of $26,537.40. The Court also reduces the legal assistant hours to 21.2. At a rate of $37.50 per hour, this results in a total of $795.00. Accordingly, the Court calculates a

---

[27]Time Table (Ex. A-1 to Pl.'s Mot. for Attorney's Fees and Costs).

total lodestar of $27,332.40.

## Conclusion

Plaintiff's motion for expert witness fees is DENIED. Plaintiff's motion for attorney's fees and costs is GRANTED IN PART and DENIED IN PART. It is ORDERED that Plaintiff is awarded $27,332.40 in attorney's fees. Finally, Plaintiff is ORDERED to submit detailed proof of his costs, and to justify each cost under the appropriate 28 U.S.C. § 1920 category.

It is so ORDERED.

SIGNED this 3rd day of August, 2011.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE